IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN  DIVISION

| | | |
|---|---|---|
| H. JAMES SEAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05-cv-00712-B |
| | ) | [wo] |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff H. James Seay ("Seay") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("SSA") , 42 U.S.C. §§ 401 *et seq.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained,  the court concludes that the Commissioner's decision should be reversed and remanded for further administrative proceedings.

## I.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.   PROCEDURAL HISTORY AND ADMINISTRATIVE FINDINGS

Seay filed a prior application for disability insurance benefits, alleging November 3, 1999 as the onset date of disability. Denied administratively and represented by counsel, Seay received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on April 18, 2001. The claim was not further pursued.

Seay filed his current application for disability insurance benefits, alleging the same November 3, 1999 onset date of disability. Following administrative denial of his current application, Seay received a requested hearing before an ALJ, who rendered an unfavorable decision. Because the Appeals Council rejected review, the ALJ's decision on May 27, 2004, became the final decision

of the Commissioner.  Noting Seay's unsuccessful prior application, the ALJ determined that "the principle of res judicata applies on and prior to April 18, 2001" and dismissed Seay's request for hearing with regard to the period on or prior to April 18, 2001.

Seay, age 44 at the time of the hearing, has a high school education and no substantial gainful work activity since the alleged onset date of disability.  The ALJ determined that Seay has the following severe impairments: *adjustment disorder with depressed mood; gouty arthritis; back pain radiating into the right leg; gastroesophageal reflux disorder; and low average to borderline intellectual functioning.*  He concluded, however,  that Seay's severe and non-severe impairments, considered singularly and in combination,  do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Appendix 1 to Subpart P.  The ALJ deemed "not totally credible" Seay's allegations of pain and functional limitations and determined that he retained the residual functional capacity ("RFC")  to perform other jobs which exist in significant numbers in the national economy. Accordingly,  the ALJ concluded that Seay  is not disabled.[1]

## III.   ISSUES

Seay specifies two  issues for this judicial review:

1.      Whether the ALJ improperly rejected the opinions of Plaintiff's treating sources; and

2.      Whether the ALJ erred in relying on and adopting the residual functional capacity evaluation of the ALJ in Plaintiff's prior claim.[2]

---

[1]R. 33-34.  The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[2]Plaintiff's Brief ("*Pl.'s Br.*") at 1 (Doc. 12, filed Dec. 19, 2005).

## IV.  DISCUSSION

### A.    Consideration of Medical Source Opinions  for RFC Assessment

Remand is necessary because the ALJ neglected to provide the requisite narrative to explain his explicit reasons for discrediting a medical source's  clearly articulated opinions of Seay's disabling mental impairments and functional limitations.

Challenging the ALJ's determination of his retained RFC for other work, Seay disputes the adequacy of the ALJ's stated reasons for discrediting the contrary  opinions by his treating physician, Dr. Steven E. Newman,  and by Dr. Bradley G. Sewick, a licensed psychologist and board-certified neuropsychologist who conducted a psychological evaluation upon Dr. Newman's referral.[3]  The ALJ did summarize, as follows, the findings obtained during Dr. Sewick's psychological evaluation and his opinions on Seay's limitations:

> Dr. Bradley G. Sewick (a licensed psychologist and board-certified neuropsychologist associated with the Spectrum Rehabilitation Centers, Inc.) saw the claimant for psychological evaluation on July 31, 2003.  The claimant reported no prior history of formal psychological testing; reported seeing Dr. Ronald Bradley, a psychiatrist, from December 1999 to September 2000; reported taking Wellbutrin at that time and which made him more depressed; and reported that he quit going to see Dr. Bradley on his own.  The claimant was cooperative; was clearly anxious with voice tight and shaking, and was fully oriented.  He reported memory dysfunction, difficulty thinking quickly, difficulty with word finding, symptoms of depression and anxiety, and loss of

---

[3]Because  remand is warranted for discussion of Dr. Sewick's relevant opinions,  the ALJ's re-evaluation of Seay's RFC necessarily requires reconsideration of all pertinent  evidence, including opinions by Dr. Newman.  Thus, the court declines to decide if the ALJ specified good cause for affording less weight to Dr. Newman's opinion. It bears emphasis, however, that the ALJ is not duty bound to adopt, in full or in part, opinions on disabling limitations or pain rendered by a treating physician.  *See Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997) ( Assessment of RFC falls squarely within the ALJ's province, but it must be based upon all relevant evidence of the claimant's ability to work despite impairments); *see also* SSR 96-5p.

interest in previous activities.  Dr. Sewick estimated that the claimant likely developed with borderline to low average intellectual abilities in most areas during his characteristic or premorbid functioning.  Testing on the Wechsler Adult Intelligence Scale-III (WAIS-III) showed the claimant to be functioning within the upper limits of the mentally retarded range with a verbal I.Q. of 79, a performance I.Q. of 63, and a full scale I.Q. of 69.  Dr. Sewick offered diagnostic impressions of Axis I of psychotic disorder, NOS, and prior history of post-traumatic stress disorder in 1999; and Axis II of current intellectual functioning in the retarded ranged.  He assigned a Gaf of 45.  He noted that the claimant was clearly not capable of functioning in competitive employment at that time; that he had developed a serious psychotic condition that interfered with his capabilities; and that he demonstrated deficits in his ability to understand and remember detailed instructions, as well as the ability to work in coordination with or in proximity of others without being distracted by them.  He noted that the claimant had marked difficulties with respect to his ability to interact appropriately to criticism.  He stated that the claimant had an impaired ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes; had marked difficulties with maintaining social appropriate behavior; and would experience great difficulties in responding appropriately to changes in the work setting and in his ability to travel in unfamiliar places (Exhibit B15F).[4]

The entirety of the ALJ's discussion regarding Dr. Sewick's opinions of Seay's mental impairments and functional limitations appears  to focus *only* on Dr. Sewick's Axis II[5] diagnostic impression of current intellectual functioning in the retarded range:

> In this case, the claimant has been diagnosed with the mental impairments of psychotic disorder, NOS, and prior history of post-traumatic stress disorder in 1999; and Axis II of current intellectual functioning in the retarded range.  The undersigned places very little weight on the report of Dr. Sewick who found the claimant had mild mental retardation and had moderate to marked limitations in all

---

[4]R. 28.

[5]Axis I is for reporting all the various disorders or conditions in the Classification except for the Personality Disorders and Mental Retardation, which are reported on Axis II.  When an individual has both an Axis I and an Axis II disorder, the principal diagnosis or the reason for the visit will be assumed to be on Axis I unless the Axis II diagnosis is followed by the qualifying phrase "(Principal Diagnosis)" or "(Reason for Visit)".  *See Diagnostic and Statistical Manual of Mental Disorders Text Revision* ("DSM-IV-TR") 27-28 (4th ed. 2000).

categories of functioning. The undersigned notes that the claimant has a high school education and has a history of performing semiskilled work. The undersigned notes that no treating physician has indicated that the claimant is functioning at the mildly mentally retarded range. However, the undersigned does find that the claimant would be limited to unskilled work not requiring contact with the general public. The undersigned finds that the claimant would have mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation.[6]

Review of Dr. Sewick's July 31, 2003 psychological evaluation indicates:

It should be noted that some of the intellectual difficulties that Mr. Seay demonstrates at this time are likely related at least in part to his psychotic thought disorder. It is possible, however, that he is experiencing slowly evolving degenerating neurological process. As a result, I would recommend evaluation procedures to rule out contributing medical disease if this has not already been done. Many patients with psychotic disorders of this type, of course, do experience a significant disturbance of intellectual functioning in several areas. It is also noted that the motor slowing that this patient demonstrates may be related at least in part to peripheral factors and should be evaluated and treated through the appropriate medical procedures if necessary. Antipsychotic medications and psychotherapy should be considered in the treatment regimen for this patient.

Mr. Seay is clearly not capable of functioning in competitive employment at this time. He has developed a serious psychotic condition that interferes with his capacities in this respect.[7]

While the ALJ notes the examiner's diagnosis of psychotic disorder, NOS,[8] it is unclear

---

[6]R. 29 (emphasis in original).

[7]R. 301.

[8]A diagnosis of Psychotic Disorder Not Otherwise Specified may be made if insufficient information is available to choose between Schizophrenia and other Psychotic Disorders (e.g., Schizoaffective Disorder) or to determine whether the presenting symptoms are substance induced or are the result of a general medical condition. Such uncertainty is particularly likely to occur early in the course of the disorder. *See DSM-IV-TR* at 311.

According to the DSM-IV-TR, a diagnosis of Psychotic Disorder Not Otherwise Specified (continued...)

whether he considered it,  in  his assessment of Seay's mental RFC, separate and apart from the

diagnosed current intellectual functioning in the retarded range.  It unclear whether the ALJ

considered Dr. Sewick's opinion that Seay's functional limitations related, in part, not to his

intellectual functioning in the retarded range, but rather to his psychotic disorder.  Omitted

altogether from the ALJ's written decision  is any narrative to provide this court with a clear

understanding of the ALJ's specific  reasons for discrediting –  as inconsistent with the evidence or

for any unstated reason – sole examining psychologist Sewick's assessment of Seay's disabling mental

impairments,  including  his  opinions  regarding  Seay's  psychotic  disorder,  NOS  and  resulting

functional limitations.  The ALJ's determination of Seay's  RFC did not incorporate, attempt to

discredit or otherwise reconcile, all of  Dr. Sewick's expressed opinions. Remand is thus dictated.[9]

---

[8](...continued)
includes psychotic symptomatology (i.e., delusions, hallucinations, disorganized speech,
grossly disorganized or catatonic behavior) about which there is inadequate information to
make a specific diagnosis or about which there is contradictory information, or disorders with
psychotic symptoms that do not meet the criteria for any specific Psychotic Disorder.
Examples include: (1) postpartum psychosis that does not meet criteria for Mood Disorder
With Psychotic Features, Brief Psychotic Disorder, Psychotic Disorder Due to a General
Medical Condition, or Substance-Induced Psychotic Disorder; (2) Psychotic symptoms that
have lasted less than 1 month but that have not yet remitted, so that the criteria for Brief
Psychotic Disorder are not met; (3) Persistent auditory hallucinations in the absence of other
features; (4) Persistent nonbizarre delusions with periods of overlapping mood episodes that
have been present for a substantial portion of the delusional disturbance; and (5) Situations
in which the clinician has concluded that a Psychotic Disorder is present, but it unable to
determine whether it is primary, due to a general medical condition, or substance induced.
*Id.* at 343.


[9]*See* SSR 96-8p ( "The RFC assessment must include a narrative discussion describing how
the evidence supports each conclusion...The adjudicator must also explain how any material
inconsistencies or ambiguities in the evidence in the case record were considered and resolved....The
RFC assessment must always consider and address medical source opinions.  If the RFC assessment
conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was
(continued...)

### B.    Consideration of Prior Claim

Noting the ALJ's application of res judicata and explicit refusal to reopen the prior April 18, 2001 final determination, Seay nonetheless contends that the ALJ made a "*de facto* reopening of the prior claim by constantly reexaming the evidence in the prior claim and then choosing to specifically adopt the residual functional capacity (RFC) of the prior ALJ."[10]    No detailed discussion is warranted on this specified issue and the court declines Seay's invitation "to recognize the reopening and consider both claims on this appeal".

Courts within the Eleventh Circuit generally do not have jurisdiction over the Commissioner's decision not to reopen a claim since such a refusal is not a final decision within the meaning of 42 U.S.C. §405(g).  However, a court has jurisdiction to review the refusal to reopen a prior decision  only if (1) the claimant raises a colorable constitutional claim or (2) the record

---

[9](...continued)
not adopted."); *SSR 96-5p* ("A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other  relevant evidence...when assessing an individual's RFC....Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."); *see also Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-6 (11th Cir. 1991)( reversal mandated by Commissioner's failure to provide sufficient reasoning to assess propriety of the  legal analysis); *Cook v. Barnhart*, 347 F. Supp. 2d 1125, 1132 (M.D. Ala. 2004)("The ALJ is required to explain his findings explicitly not just for the claimant's benefit. Clear and specific findings are also the *sine qua non* of effective review of this court.") As this court has instructed previously, the ALJ must provide a narrative discussion to explain any good cause to reject or discredit all of, or even some of,  the treating physician's opinions on  the claimant's disabling pain and functional limitations.  *See Dunn v. Barnhart,* No. 2:05-cv-00192, Mem. Op. at 3-8 (M.D. Ala. May 19, 2006); *Austin v. Barnhart*, No. 3:04-cv-01133-DRB, Mem. Op. at 4-6 (M.D. Ala. Jan. 27, 2006); *Murkerson v. Barnhart*, No. 1:04-cv-754-B, Mem. Op. at 9-11 (M.D. Ala. Dec. 16, 2005); *Johnson v. Barnhart*, No. 1:04-cv-00285-DRB, Mem. Op. at 9-14 (M.D. Ala. July 26, 2005).

[10]*Pl.'s Br.* at 11.

demonstrates that there has been an actual reexamination of the merits of the prior administrative decision.  *See Loudermilk v. Barnhart*, 290 F. 3d 1265, 1268 (11th Cir. 2002); *Wolfe v. Chater*, 86 F. 3d 1072, 1078 (11th Cir. 1996).  An ALJ is allowed, however, some leeway to evaluate how newly presented evidence relates back to a prior application in order to determine whether to reopen the case.  *See Wolfe*, 86 F. 3d at 1078.  When an ALJ evaluates evidence presented in support of an original application solely to make a reasoned determination of its res judicata effect on the second application, this does not constitute a reopening.  *Id.* at 1079.

Here, the ALJ stated clearly that res judicata applies on or prior to April 18, 2001.  Similarly, the ALJ explicitly refused to grant Seay's implied motion to reopen the prior claim set forth on his April 30, 2002 request for hearing.[11]  The ALJ summarized the RFC  assessment rendered by the first ALJ on Seay's prior unchallenged claim, and after consideration of the evidentiary record, he found "no reason to change the residual functional capacity found by ALJ Whitten, other than adding no dealing with the general public."[12]  The ALJ's examination of the prior ALJ's RFC assessment in formulating his own RFC on the current claim simply does not amount to a reconsideration of Seay's prior application on its merits.[13]  Consequently, this court does not have

---

[11]R. 22, 33.

[12]R. 30.

[13] *See, e.g., Cash v. Barnhart,* 327 F. 3d 1252, 1256-1257 (11th Cir. 2003)(no actual or de facto reopening where ALJ only looked at subsequent claim and prior claim to determine if they involved the same claims, facts and issues for application of res judicata and ALJ construed claimant' second application as a motion to reopen her first claim and expressly denied her motion); *Wolfe v. Chater*, 86 F. 3d 1072, 1079 (11th Cir. 1996)(ALJ's examination of conflicting vocational expert testimony from the two prior hearings and decision to rely on second vocational expert's testimony in own finding was appropriate and did not constitute a reopening).

jurisdiction to consider the prior claim.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is not supported by substantial evidence. Accordingly, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner, pursuant to *sentence four* of 42 U.S.C. §405(g) for further proceedings.

A separate judgment is entered herewith.

Done this 28th day of September 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE